```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
-------------------------------x
                               :
UNITED STATES OF AMERICA       :    Case No. 23-332 (RBW)
                               :
     - v. -                    :
                               :
MATTHEW SCHMITZ,               :
                               :
         Defendant             :
-------------------------------x
```

## DEFENDANT MATTHEW SCHMITZ' SENTENCING MEMORANDUM

The defendant, Matthew Schmitz, by his attorney, Tracey L. Eadie Gaffey of the Federal Defenders of New York, Inc., hereby respectfully submits this sentencing memorandum in reference to the above-captioned matter scheduled for sentencing on January 16, 2025. Mr. Schmitz also submits character letters for the Court's consideration. *See* Exhibit A.

### I. Introduction

Mr. Schmitz pled guilty pursuant to an agreement with the government to entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), count one of a four-count misdemeanor information. Count One carries a maximum sentence of one year of imprisonment, a fine of $100,000, a term of supervised release of not more than one year, an obligation to

1

pay restitution and a $25.00-dollar special assessment. By mutual agreement, Mr. Schmitz will pay $500.00 in restitution at the time of sentence.  The parties agree that the total offense level under the federal sentencing guidelines is four with a resultant advisory sentencing range of zero to six months.

Mr. Schmitz was arrested in the Eastern District of New York where he resides, presented before the Magistrate Judge in the courthouse in Central Islip, N.Y. and released upon a $50,000 unsecured bond co-signed by his mother. He has been compliant with all release conditions up to the present.

## II.  Section 3553(a) Factors

### A. History and Characteristics of Matthew Schmitz. [1]

Matthew Schmitz is a 36-year-old married father of one child who is expecting his second child in March. His only other criminal conviction is a 12-year-old Driving While Ability Impaired conviction, a New York State Vehicle and Traffic Law infraction for which he suffered a 90-day license suspension, a fine and one-year conditional discharge. [2] . During

---

[1] ███████████████████████████████.
[2] In New York State, a conditional discharge is a "good behavior" disposition: if the individual does not commit a new crime the case will be dismissed after one year.

his formative years Matthew and his mother Dorothy lived with her mother Chryse Schmitz who passed away about 4 years ago. ████████ ████████████████████████████████████████████████ ████████████████████████████████████ ██████████ ████████████████████████████████  Mr. Schmitz enjoys a good relationship with his mother and her wife of six years; they provide him with reassurance, familial kindness, and encouragement. Mr. Schmitz has been married to his wife, Jesselyn for almost three years. ████████████████████████████████ ████████████████████████████████████████. The Schmitz currently rent a two-bedroom apartment from Mr. Schmitz' aunt and uncle which is located at the back of their property. Mrs. Schmitz works part-time in medical administration.

Matthew Schmitz dropped out of high school in the eleventh grade after the death of his then girlfriend's father.  He had developed a bond with him, looking upon him as a father figure. His death deeply effected Mr. Schmitz. Mr. Schmitz had various jobs and worked to get a General Equivalency Development diploma which he obtained in 2007.  From 2007, Mr. Schmitz worked in the Oakneck Deli in West Islip, NY as a clerk until it closed in 2017. In 2012 he completed a training course in heating, ventilation and air conditioning and earned a certificate.  That same year he got a (second) job as a sales associate for a Long Island electrical supply company.  The company closed in 2021.  In September of 2021,

3

Mr. Schmitz began new employment as a sales representative for the New Jersey based company Burgoyne Electrical.

B. **Nature and Circumstances of the Offense**

> "Now is the Winter of Our Discontent…"
> Richard III, Act I, Scene I.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996). Every time I revisit this quote I think of that well-known phrase from the Book of Ecclesiastes: "What has been will be again and what has been done will be done again; there is nothing new under the sun." *Ecclesiastes 1-9*. Although each case presents a particular human failing, we know that history repeats itself. This factor enables us to recognize human failings, numerous as they are, as something we have seen before, either in ourselves or in others.

In late 2020, Matthew Schmitz found himself discontented, searching for more meaning in life, and wanting to participate more as a citizen. In his twenties, he tried to join the National Guard, but was excluded because he is an asthmatic. He retained a residual need to put his patriotism into action, not with violence, but with some sort of activism. But as we know from

4

history and human nature, not all creditable desires are channeled into beneficent action.

He found a chance when his cousin referred him to a meeting of the Proud Boys. Mr. Schmitz' cousin told him the Proud Boys march and organize for action in line with their patriotic values. This appealed to Matthew Schmitz and made him want to be a part of a worthy effort. Matthew Schmitz did not sign on, to his information and understanding, to a group that used violence. Mr. Schmitz travelled to the District of Columbia by himself in December of 2020 for a rally. Mr. Schmitz did not witness any violence perpetuated by any of the rally participants. He did become aware, however, of a rumor that a person from Long Island was stabbed by an Antifa counter-protester.

### 1. The Ministry of Self-Defense Chats

After the December rally, Mr. Schmitz' cousin got him into a January 2nd Proud Boys chat ("Ministry of Self-Defense" or "MOSD-Op") in anticipation of the January 6th rally. The government provided counsel with these "chats" in discovery. Having reviewed them certain aspects become obvious and should have militated against the government cherry-picking statements from within the chats.[3]

---

[3] Telegram is a messaging application for smart devices capable of sending encrypted communications. In private groups, an administrator invites users directly, approves requests to join or sets permissions enabling others to add new people. Telegram can remain open in the background of your device until you close the app or the administrator closes out the group.

5

First, the "MOSD-Op" chat was open from January 1, 2021 at 3:48:55am (UTC-5) until January 4, 2021 4:17:45pm (UTC-5) (Participants started leaving at 1:58:04pm (UTC-5)). There is only one instance of Mr. Schmitz being actively present during this time span and that is on January 2nd when he messaged the group at 12:54:26pm (UTC-5) saying "I don't see any pins …,"[4] and then received a message at 12:54:27pm (UTC-5) that had been previously pinned. He then sent a message to the group at 12:55:51pm (UTC-5) asking for confirmation regarding the pinned message. The pinned message referred to an instruction not to bring any Proud Boy paraphernalia. In its sentencing letter the government mischaracterizes this as Mr. Schmitz repeating "this instruction to others within the group" presumably to make it look like Mr. Schmitz was a person who could give such a direction. He was not. *Government sentencing letter, p.3 ("gov letter")*.

Second, at 11:53:54pm (UTC-5), roughly eleven hours after Mr. Schmitz' message, a group member messaged, "Any reason I can't carry my Leatherman?  Is there a folding blade length limit in dc?"  On January 4, 2021, at 4:41:43am (UTC-5), days later, another

---

[4] In Telegram "pins" refers the ability to "pin" messages within the group, usually done by the administrator. Tapping on the pinned messages at the top of a chat scrolls directly to that message. All participants in the group typically receive notification of a pin unless they were not previously part of the group or they have muted their notifications.

person messaged, "I am taking a knife also because fuck ANTIFA twice." On January 3, 2021, at 8:18:32am (UTC-10) a group member messaged, "What's the deal with flying with body armor? Does TSA Fuck with you? The government is trying to imply and have this Court infer that Matthew Schmitz knew what everyone was saying at all times and signed on for anything anyone in this group may have intended. He did not. Mr. Schmitz was not involved in "coordinated criminal activity," indeed, he did not believe he was or would be involved in criminal activity at all.

Moreover, cherry-picking from this four-day group chat eliminates all context. Certain individual contributed much more to this chat than most of the others. In addition, many messages appear random; some individuals messaged things clearly trying to be funny, others, one cannot tell one way or the other. Some messages are obnoxious, but not criminal. Many are juvenile and not criminal. There is posturing and some bickering. There are messages about hotels, hotel prices, who is bringing snacks and similar items. Several individuals make clear that they are not and do not want to be perceived as a "racist" or homophobic group of "Nazis." Others are concerned about the behavior of other Proud Boy members around the country because they do not want their group to be associated with violence. Many expect to be the target of Antifa violence on January 6th.

## 2. Mr. Schmitz was in the Capitol Building for 41 Seconds

Matthew Schmitz drove to Washington, D.C. alone on January 4, 2021. He did not intend to "riot" or be involved in any violence. He was not armed with anything. He did believe that he could possibly be the target of Antifa violence. What happened on January 6, 2021 was nothing Mr. Schmitz intended. Matthew Schmitz was not at the forefront of individuals trying to get into the Capitol and overrunning the police. Very quickly he found himself moving forward with the large of crowd of both men and women. Rioters shattered windows adjacent to the Senate Wing Door at approximately 2:12 pm. Mr. Schmitz entered the building through the door at approximately 2:14 pm – two minutes later – along with a steady stream of men and women. He did not run, jump, or break anything. He did not take any pictures. He did not direct anyone to do anything. He left through a window at approximately 2:15:25 p.m.

In its sentencing submission, the government again seeks to imply and have this Court infer that Matthew Schmitz was more involved with the Proud Boys than he was and thus deserving of more punishment, by linking him with William Pepe and Dominic Pezzola. *See* Gov. letter p.5-7, 11-12. Significantly, the government can point to nothing other than a few instances of proximity to link these men to Matthew Schmitz. Matthew Schmitz

8

did not know either of these men on January 6, 2021 or before. He did not communicate with them or coordinate with them in any manner. If Dominic Pezzola shattered two panes of glass next to the Senate Wing Door at 2:12 pm, Matthew Schmitz did not know it as he entered by the door with others in the crowd at 2:14:44pm. According to image 11, *gov letter p.10*, Mr. Schmitz was outside the Senate Wing Door after leaving the building through the window; he did not "join Pezzola outside the Senate Wing Door…" *Id. at 11*. Mr. Schmitz did not "depart[ed] the Upper West Terrace with Pepe and Pezzola." *Id*. (emphasis added). The government knows, as per the discovery provided to counsel, that the person Mr. Schmitz was walking with is the individual next to him in image 13, *gov. letter p. 1*, wearing a camouflage helmet. Mr. Schmitz met that individual in D.C. in December. That individual along with Mr. Schmitz and couple of others met on the National Mall that day.[5] According to the information provided by the government, this individual entered the Capitol at approximately 2:13 pm, but did not leave the building until 3:17 pm. Mr. Schmitz waited outside and started walking off the grounds at about 3:18 pm. The government's attempt to increase guilt by proximity is unfounded.

---

[5] According to this individual, they were looking for a public restroom and eventually found a port-a-john. This individual, Mr. Schmitz and a couple of other people also bought food at the food truck. Mr. Schmitz had beer and pizza with this individual and others the night before.

9

### C. <u>An Appropriate Sentence in this Case</u>

*"Every subject's duty is the King's, but every subject's soul is his own."*
                    Henry V, Act IV, Scene I

Matthew Schmitz has pled guilty and taken responsibility for his offense. He does not blame Trump, he does not blame the Proud Boys, he blames himself knowing that everyone must be held to account for their own actions. He regrets getting involved with the Proud Boys and not recognizing that their goals were chaotic, and their methods not governable. That is not the organization he believed he was associating himself with. He respects the law and when he was charged with driving while his ability was impaired twelve years ago, he took responsibility, pled guilty, paid his fine, served his license suspension and did not get in trouble with the law going forward.  Standing before the Court for sentencing is not where he thought he would be on January 16, 2025, but he knows that he is responsible for his own actions on January 6, 2021.

We submit that in this case, specific deterrence should bear less weight because of Matthew Schmitz' background and his life after January 6, 2021.  We understand, however, that unlike most cases that come before a court, general deterrence and respect for the law is a larger concern here. We do submit, however, there is no compelling need for incarceration in Matthew Schmitz' case. Because of the notoriety surrounding January 6 prosecutions for

the past three years, the public knows that not everyone who was at the Capitol that day acted in the same manner and should be painted with the same brush. The public knows that some individuals have been sentenced to lengthy jail terms and others have received sentences of probation. Respect for the law has not been compromised.

We submit that a sentence of probation and home detention in this case would serve the ends of justice as described in 18 U.S.C. § 3553(a). Matthew Schmitz associated himself with the Proud Boys for only a few short months. He did not direct or incite violence, nor did he engage in destructive behavior while on the Capitol grounds. He was in the Capitol building for 41 seconds only and exited through a broken window as his only way out as others continued to stream through the door. The cases cited by the government regarding disparity support a non-incarceratory sentence for Matthew Schmitz rather than the government's request for jail.[6] Finally, the Department of Probation in the PSR at paragraph 133 indicates that in the last five years 48% of defendants whose primary guideline was §2B2.3 with a total offense level of 4 and a criminal history category of I received a non-

---

[6] Mr. Schmitz did not destroy evidence, *United States v. Adam Johnson*, 21 Cr. 648 (RBW); he did not agree with anyone to enter the Capitol as a unit or celebrate in a Senator's office with a "joint", *United States v. Freedom Vy*, 23 Cr. 405 (TJK); he was not in a position of leadership in the Proud Boys, was not in the first wave to enter on the restricted grounds and did not direct anyone to delete anything from social media, *United States v. Jeffrey Finley*, 21 Cr. 526 (TSC).

incarcaratory sentence.  A sentence of probation in Mr. Schmitz case would not create a disparity.

### III. Conclusion

I have attached letters from family members as well as from Mr. Schmitz employer and co-workers in support of him and respectfully ask the Court to consider them in sentencing. For all the foregoing reasons, we respectfully ask the Court to impose a sentence of probation and home detention, as well as $500.00 in restitution.

Respectfully submitted,

_____/s/_____
Tracey L. Eadie Gaffey
Assistant Federal Defender
Federal Defenders of New York
Attorney for Matthew Schmitz
770 Federal Plaza
Central Islip, NY  11722
(631) 712-6500
tracey_gaffey@fd.org

**Certificate of Service**

I certify that a copy of the forgoing was filed electronically for the Court and emailed to opposing counsel on January 13, 2025.

<u>/s/ Tracey L. Eadie Gaffey</u>
Tracey L. Eadie Gaffey
Assistant Federal Defender
Attorney for Mr. Matthew Schmitz